## THE POCONOKET.

### BACON v. THE POCONOKET.

(District Court, E. D. Pennsylvania. March 6, 1894.)

#### No. 9.

ADMIRALTY PRACTICE—SUITS IN REM—BOND FOR POSSESSION—POSSESSORY SUITS.
  The right of a vessel owner to protect himself from loss resulting from a seizure under admiralty process, by giving bond and retaining possession, extends, under Rev. St. § 941, to possessory actions as well as others; and, if he fails to exercise the right, he cannot require the libelant to give security for such damages.

Libel in rem by Nathaniel T. Bacon to recover the steamer Poconoket from the possession of the Interstate Steamboat Company. Heard on a rule against libelant for security for damages, and for increase of security for costs.

J. Rodman Paul and N. Dubois Miller, for libelant.

Henry Flanders and Edward F. Pugh, for respondent.

(1) As a general rule, a litigation may be carried on at the charge of costs; but, if a litigant seeks to change the possession of property, then he must indemnify the real owner when the claim is decided against him.

(2) In The Acteon, 2 Dod. 48, Lord Stowell, in affirmation of the above rule, said: "The natural rule is that, if a party be unjustly deprived of his property, he ought to be put, as nearly as possible, in the same state as he was before the deprivation took place." "That is," said Dr. Lushington, who quotes this passage in The Elize, 2 Spinks, 34, "he is entitled to restitution, with costs and damages."

(3) In The John, 2 Hagg. Adm. 305, 317, the high court of admiralty reversed the vice admiralty, and pronounced for the restitution of the vessel to the former possessor, and also equitable compensation, in the nature of demurrage, for her detention in the hands of the adversary party under the decision of the lower court.

(4) In The Glasgow, Swab. 145, where the vessel, in a possessory action, remained in the custody of the marshal, the court dismissed the libel, and ordered the libelant to pay the costs, and demurrage during detention.

(5) In The Director, 34 Fed. 57, Deady, J., said: "The libel prayed for process against said bark, wheat, and master, to the end that the first might be sold to pay the damages of the libelants; that the second 'might be delivered to the libelants free of all charges and liens. * * * On reading and filing the libel, an order was made thereon, allowing process to issue, as prayed for in the libel, on the filing of a stipulation by the libelants, in the sum of $50,000, as security to the adverse parties for costs and damages thereby incurred, on which the vessel and wheat were subsequently arrested, and all parties in interest cited to appear."

(6) The foregoing cases are causes of possession, which, admittedly, stand on a different footing from ordinary cases in rem. In The Adolph, 5 Fed. 114, where it was held that the claimant was not entitled to a bond for the damages he might sustain pending the libelant's appeal to the circuit court, Choate, J., said: "Suits for possession stand on a different ground. They are brought to recover the possession and use of the vessel."

(7) Nevertheless, damages have been allowed for the arrest and detention of vessels, even in ordinary proceedings in rem. For example: In Excursion Co. v. Fleming, 40 Fed. 593, which was a libel for alleged wrongful seizure and detention of plaintiff's property, Judge Wales held that a libelant who procures the seizure and detention of vessels for the purpose of enforcing an alleged lien against them, without an order of court, when, on the facts stated in his libel, he has no lien, is liable in damages to the owners, even though he acted in good faith, as an attachment issues, as of course, in such cases, on the filing of the libel.

(8) Excursion Co. v. Fleming was the case of an ordinary attachment, where the property was arrested as security in a cause of damage and where it could at once have been released on the filing of a stipulation. But the arrest was not ordered or directed by the court, the attachment issuing as matter of course; and, as the arrest was wrongful, the libelant was held responsible in damages.

(9) In the present case the writ issued without the knowledge of the court, and without any security for damages, although valuable property was taken out of the hands of the respondent company, who claim the legal title and the lawful possession; and this at the suit of a nonresident, who, presumably, has not a sixpence of property within the jurisdiction of the court. It is a maxim that a court of admiralty always inclines in favor of the person in possession (The Victoria, Swab. 408); and it is respectfully submitted that process should not be permitted to issue, or be enforced, on behalf of the disturber of that possession, without adequate security being first required.

(10) In O'Brien v. Roosevelt, cited by Judge Wales in Excursion Co. v. Fleming, supra, the defendants caused the vessel to be libeled, and seized, by process issuing out of the United States district court, for repairs. On the ground that the vessel had been repaired in her home port, the libel was dismissed. In an action brought for damages, the jury found for the plaintiff; and the verdict was sustained. In The Cathcart, L. R. 1 Adm. & Ecc. 314, the libelants were condemned in damages on the ground that, with adequate knowledge of the facts, they had arrested the vessel when they had no valid claim against her.

(11) Canter v. Insurance Co., 3 Pet. 307, cited by counsel for libelant, is wholly inapplicable to the case now before the court. What was decided in that case was this, to wit, if the libelant does not appeal from a judgment allowing only restitution, when he claims damages, also, then he cannot raise the question of damages in the appellate tribunal.

(12) On the face of the foregoing cases, can it be doubted that the respondent company, in the pending cause, which is a cause of possession, are entitled to the security which they ask?

### Can a Stipulation be Entered in a Cause of Possession?

(13) The general rule of law is that, in a cause of possession involving the title to a vessel, the court will not preliminarily restore the property until the question of title is determined.

(14) The American and English Encyclopaedia of Law (volume 23, p. 576) states the rule thus: "A vessel will not be released on stipulation by the claimant, when the object of the libel is to determine the right of possession to the vessel, nor where such discharge would defeat the very object of the suit; for example, to enforce a seizure under the neutrality laws."

(15) In Henry's Admiralty Jurisdiction and Procedure it is said: "In causes of possession, the vessel cannot be released on bail, but the court will expedite the hearing of the case, and of the appeal."

(16) There are exceptions to all rules, and particularly in disputes between part owners with regard to the possession and employment of the vessel. The court will restore her to the party that is desirous of employing her, whether it be the majority or minority, taking a stipulation for her safe return. Cases may be found, doubtless, where restitution has been awarded when the title is involved; but they are English cases, arising under peculiar circumstances, and, admittedly, an innovation upon the long-established practice of the admiralty. There are one or two cases in this district, but the question was not raised. In New York there is a rule of court, adopted only last July, allowing the release of a vessel, in petitory suits, upon such security and terms as the court may determine. It is believed that no such rule exists in any other district.

(17) But the application now before the court is not for restitution, but security for damages. To deny that application, and under the circumstances of this case, as disclosed by the pleadings, to proffer her back, exacting security from the party who has been wrongfully dispossessed, and giving such security to the wrongdoer, would seem, it is respectfully submitted, a hardship and an injustice. The respondent company has paid to the builder of this vessel all that it stipulated to pay, to wit, $42,500. It has, moreover, in completing her,—which the builder, by reason of his insolvency, failed to do, —expended, additionally, $17,500. And she has been taken out of its possession by a nonresident, who has invested in a lawsuit touching her ownership. Under such circumstances, can he be permitted to litigate without risk and without responsibility?

BUTLER, District Judge. Where damages must result from an unwarranted seizure it is reasonable that the owner should be secured indemnification. Ordinarily where seizure occurs—as to enforce liens—the owner may protect himself against loss by giving security and retaining the vessel; and there is therefore no occasion for security. If he may do this where the seizure, as here, is

in a possessory action, there can be no reason for distinguishing such a case (in this respect) from any other. The only question for consideration therefore is: Can he do so? It is difficult to discover a reason why he should not be allowed to do so. There is no occasion in either case for retaining the vessel in custody; and to do so must entail serious loss. Why therefore should it be done in possessory actions? The situation in such cases is precisely the same as in all others. If the respondent can keep possession he should do so; and if he does not his injury is self-inflicted.

Justification may, nevertheless, be found for the respondent's contention in the earlier admiralty practice abroad; but that practice does not, in my judgment, prevail to-day, even there. See The Evangelistria, 46 Law J. Adm. 1, 25 Wkly. Rep. 255, and Pritch. Adm. Dig. (3d Ed.) p. 1554.

In this country I do not think such a practice ever existed, though there seems to have been some difference of opinion about it. In this judicial district vessels have been released, in repeated instances, without question. Since the acts of 1790, 1792, and 1793, as embodied in section 941 of the Revised Statutes, there can hardly have been room for doubt on the subject. The section reads as follows:

"When a warrant of arrest or other process in rem is issued in any cause of admiralty jurisdiction except cases of seizure for forfeiture under the laws of the United States, the marshal shall stay the execution of such process, or discharge the property arrested if the process has been levied, on receiving from the claimant a bond or stipulation in double the amount claimed by the libelant, with sufficient surety to be approved by the judge of the court where the case is pending * * * to answer the decree of the court in such cause. * * *"

The language leaves nothing for interpretation. All seizures are embraced, without regard to the cause of action, and owners are empowered to retain possession, on giving security, in all such cases. Admiralty rule 11, prescribed by the supreme court, conforms to this view; and the rules of the southern and eastern districts of New York provide for it in express terms. See, also, Ben. Adm. (last edition, 1894) § 498. I need not extend this opinion by commenting on the numerous cases to which counsel have invited my attention, but will file the briefs herewith for the benefit of future reference.

In view of the probable extent of the litigation which may occur in this case the security for costs should be increased to $500.

An order may be prepared in conformity with this opinion.